UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HOMETASK HANDYMAN SERVICES, INC., <br><br> Plaintiff, <br><br> v. <br><br> PAUL SZEWCZYK, <br><br> Defendant. | CASE NO. C07-1283RSM <br><br> ORDER GRANTING PART AND DENYING IN PART PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION |

This matter is before the Court for consideration of a motion by plaintiff HomeTask Handyman Services, Inc., ("HomeTask") for a preliminary injunction. Oral argument was heard on October 10, 2007, and the matter has been fully considered.[1]  For the reasons set forth below, the Court shall grant in part, and deny in part, plaintiff's motion.

FACTUAL BACKGROUND

Plaintiff, a Washington corporation, filed a complaint for trademark infringement and breach of contract against Paul Szewczyk, a former franchisee. The complaint bears claims for trademark infringement, trademark dilution, false designation and misrepresentation of origin, and breach of contract, including a claim of violation of a covenant not to compete. Jurisdiction of this Court is based

---

[1] Defendant's motion for leave to file additional documents (Dkt. # 17) was DENIED in an oral ruling from the bench.

ORDER ON MOTION FOR PRELIMINARY
INJUNCTION - 1

solely on the federal trademark claims.

In this motion for a preliminary injunction, plaintiff asks that defendant be enjoined from "infringing on Hometask's trademarks and operating a competing business in violation of a covenant against competition." Motion for Preliminary Injunction, p. 1. Defendant has opposed the motion in all aspects.

The underlying facts are not in dispute. HomeTask sells franchises to persons who want to be in the home handyman business. HomeTask offers a business system, advertising, and other support to its franchisees, and imposes requirements upon them, including a requirement that they drive a distinctive yellow truck with the HomeTask logo on their handyman calls. The HomeTask name is a registered trademark.

Plaintiff and defendant entered into a franchise agreement on June 30, 2005. Defendant signed the contract on behalf of "Grandpa and Grandma Helpers", and also executed a personal guaranty, pursuant to which he agreed to comply with all provisions of the franchise agreement. The relevant portions of that agreement will be discussed below. On May 3, 2007, defendant wrote to HomeTask advising them that he was unilaterally terminating the franchise agreement, effective May 4, 2007, for "medical and financial reasons." Complaint, Exhibit B. Defendant asserted that due to a back injury he was unable to comply with the requirement that he work at least 30 hours a week. He offered to pay his outstanding obligations to HomeTask over the next few months, completing payment by August 10, 2007. By return letter, HomeTask confirmed Mr. Szewczyk's termination and reminded him of his contractual obligations upon termination, including a covenant not to compete and the cessation of all use of HomeTask's trademarks. Complaint, Exhibit C.

On August 16, 2007, HomeTask filed this complaint, alleging that Mr. Szewczyk has infringed the trademark and breached his post-termination contractual obligations. Together with the complaint, HomeTask filed this motion for a preliminary injunction, asking that defendant be enjoined from (1) making any further use of HomeTask's name or trademarks in any manner, including the use of phone numbers formerly associated in connection with his HomeTask business; and (2) operating a competing home repair business within 100 miles of his former franchised territory, "or any other HOMETASK

ORDER ON MOTION FOR PRELIMINARY
INJUNCTION - 2

franchisee", for two years. Defendant contends that the terms of the non-competition covenant are overbroad and unenforceable, as those terms will preclude him from working at any home-handyman or construction-related trade and thus drive him into bankruptcy.

## ANALYSIS

The traditional criteria for granting a preliminary injunction are: (1) a strong likelihood of success on the merits; (2) the possibility of irreparable injury to the plaintiff if injunctive relief is not granted; (3) a balance of hardships favoring the plaintiff: and (4) advancement of the public interest. *Textile Unlimited, Inc., v. A..BMH Co., Inc.*, 240 F. 3d 781, 786 (9th Cir. 2001); citing *Los Angeles Memorial Coliseum Commission v. National Football League*, 634 F. 2d 1197, 1200 (9th Cir. 1980). A preliminary injunction is not an adjudication on the merits, but a device for preserving the status quo until trial, and for preventing the irreparable loss of rights before judgment. *Id.*, citing *Sierra On-Line, Inc., v. Phoenix Software, Inc.,* 739 F. 2d 1415, 1422 (9th Cir. 1984).

In this circuit, a party moving for a preliminary injunction may meet its burden by demonstrating either (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised, and the balance of hardships tips sharply in the moving party's favor. *Los Angeles Memorial Coliseum Commission v. National Football League*, 634 F. 2d at 1201,   These two formulations are not separate tests, but represent a sliding scale on which the required degree of irreparable harm increases as the probability of success decreases. *United States v. Odessa Union Warehouse Co-op*, 833 F. 2d 172, 174 (9th Cir. 1987).

The Court shall address the trademark and contract issues separately.

I. **Trademark Infringement**

In the complaint, plaintiff alleges that it is the owner of the HomeTask trademark, which is federally registered.   It has not provided a copy of the registration, but there appears to be no dispute that the name "HomeTask" is a registered trademark. Plaintiff alleges that Mr. Szewczyk, has infringed and continues to infringe its trademarks by (a) using the same telephone number that he used while operating as a HomeTask franchisee, and (b) using in his handyman business a van painted a distinctive yellow color used by HomeTask. Plaintiff asserts that these two activities create a likelihood of

ORDER ON MOTION FOR PRELIMINARY
INJUNCTION - 3

confusion as to origin.

Defendant, in opposition, does not dispute the facts regarding his use of the yellow van and the phone number. He admits that he is still using the same phone number that he used while doing business as a HomeTask franchisee. And while he has taken the "HomeTask" logo off his work van, he has not changed the color, because he cannot afford to have it re-painted. However, he asserts that plaintiff does not have a protectable interest in either the yellow color of the van, or the phone number.

Plaintiff's reply admits that it does not "claim to have a registered trademark in 'yellow vans'", or in Mr. Szewczyk's phone number. However, plaintiff argues that these were used by defendant in conjunction with the trademarked HomeTask name, so that the continued use of the yellow van and the phone number creates the potential for confusion in the marketplace. Plaintiff has a valid argument regarding the phone number under the franchise termination provisions, addressed below. However, as to the trademark or trade dress infringement and associated claims, plaintiff's argument for a preliminary injunction fails, both for the yellow van and for the phone number.

The complaint here alleges violations of the Lanham Act under trademark infringement (Section 32 of the Lanham Act, 15 U.S.C. § 1114(1)), false designation of origin (Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)), and trademark dilution, 15 U.S.C. § 1125(c). Federal trademark infringement claims under § 32 apply to registered marks, while false designation of origin claims under § 43(a) apply to both registered and unregistered marks, and protect against a wider range of practices. Since plaintiff admits that it does not have a registered trademark in the yellow vans or the phone number, the claim must be considered as brought under § 43(a).

To prevail on a claim of false designation or trademark dilution under § 43, a plaintiff must first establish that it has a valid mark that is either registered or unregistered. *eAcceleration Corporation v. Trend Micro, Inc.*, 408 F. Supp. 2d 1110, 1114 (W.D. Wash. 2006); *citing Comedy III Products v. New Line Cinema*, 200 F. 3d 593, 594 (9th Cir. 2000); *Brookfield Communications, Inc., v. West Coast Entertainment Corporation*, 174 F. 3d 1046, 1046-7 (9th Cir. 1999). To be a legally protected mark, an image must be capable of distinguishing the holder's goods from the goods of others. *Id*. at 1115, *citing Kendall-Jackson Winery v. E. & J. Gallo Winery*, 150 F. 3d 1042, 1047 (9th Cir. 1998).

ORDER ON MOTION FOR PRELIMINARY
INJUNCTION - 4

In order to be protectable, a mark must be distinctive. Although the requirement of distinctiveness does not appear in § 43 itself, it has been "universally imposed" by the courts. *Wal-Mart Stores, Inc v. Samara Brothers*, 529 U.S. 205, 210 (2000) The requirement is necessary because without distinctiveness of the trade dress, it would not "cause confusion" as to the origin of the goods as required by the statute. *Id*.

A color mark, standing alone, can never be inherently distinctive. *Id.* at 211, *citing Qualitex Co. v. Jacobson Products Co.*, 514 U.S. 159, 162-63 (1995). However, a color may acquire secondary meaning if, over time, customers come to treat that particular color on a product or its packaging as signifying a particular brand. *Id*. at 212. Plaintiff has nowhere alleged any kind of "secondary meaning" to its distinctive yellow color on the vans, and defendant has provided many examples of other similar businesses that use yellow trucks. Although plaintiff continues to assert in reply that the yellow color on defendant's van is confusing, the argument is so brief as to amount to abandonment of this claim. The motion for a preliminary injunction shall be denied as to the yellow van.

As to the phone number, plaintiff asserts that trademark protection exists because the phone number was used by Mr. Szewczyk in conjunction with the HomeTask franchise, so there is potential for confusion. Defendant does not dispute the fact that he now uses this same phone number for his "Handy Helper" business. However, he asserts that the number is his personal cell phone number, which he used for two years prior to entering into the HomeTask franchise, and now continues to use as his personal cell number. In opposition to the preliminary injunction motion, defendant asserts that the phone number is not protectable under the Lanham Act, nor susceptible to a "risk of confusion" analysis.

The Court finds that plaintiff has failed to show that the phone number is protected under the Lanham Act, and thus fails to demonstrate a likelihood of success on the merits of this claim. The motion for a preliminary injunction under the Lanham Act shall be denied with respect to the phone number.

**II. Breach of Contract and Covenant Not to Compete**

Section 9.1(a) of the franchise agreement provides that for two years after termination of the agreement, a former franchisee may not

> [p]articipate directly or indirectly or serve in any capacity in any business engaged

ORDER ON MOTION FOR PRELIMINARY
INJUNCTION - 5

       in the sale of services or produces the same as, similar to, or competitive with those offered by the franchised business.  This covenant not to compete applies:
(i) . . . after termination within a one hundred (100) mile radius from the boundary of your territory, and from any franchised, Franchisor-owned or affiliated company-owned premises; (ii) on the Internet; and (iii) on any other Multi-Area Marketing channels used by us; . . .

Complaint, Exhibit A, p. 17.  Section 9.1 also provides that after termination, a former franchisee may not "solicit, service, or sell to, directly or indirectly, any customer who was a customer of the franchised business prior to the termination. . . ."  *Id*., at Section 9.1(b).

       Restrictive covenants in employment contracts are enforceable in Washington, so long as the restrictions therein are "not greater than are reasonably necessary to protect the business or good will of the employer, even though they restrain the employee of his liberty to engage in a certain occupation or business, and deprive the public of the services, or restrain trade." *Alexander & Alexander v. Wohlman*, 19 Wash. App. 670, 686 (1978) (*citing Racine v. Bender*, 141 Wash. 606 (1927)).   In examining reasonableness of the restrictions, the court will look to the extent of the restriction, the length of time the restriction is in effect, and the geographic area covered.  The reasonableness of the covenant is a conclusion of law.  *Alexander*, 19 Wash. App. at 684.  Non-competition covenants in the franchise setting are treated under the same standards as covenants in the employment context. *Armstrong v. Taco Time International*, 30 Wash. App. 538, 543 (Division III, 1981).

       The Washington courts employ a three-part test to determine reasonableness of the covenant: (1)  whether the restraint is necessary for the protection of the business or good will of the employer; (2) whether the restraint on the employee is greater than is reasonably necessary to secure the employer's business or goodwill; and  (3) whether the degree of injury to the public from the loss of the service and skill of the employee is great enough to warrant nonenforcement of the covenant. *Knight, Vale & Gregory v. McDaniel*, 37 Wn. App. 366, 369; *review denied*, 101 Wash. 2d 1025 (1984).

       The Supreme Court of Washington has upheld covenants not to compete to the extent that they are reasonable as to time and geographical scope. *Wood v. May*, 73 Wash. 2d 307 (1968).  The reasonableness of a covenant is determined by the court as a matter of law. *Knight*, 37 Wn. App. at 369.  Where necessary to ensure reasonableness, the court may alter or modify the covenant before enforcing

ORDER ON MOTION FOR PRELIMINARY
INJUNCTION - 6

it. *Armstrong v. Taco Time International*, 30 Wash. App. at 543.

HomeTask asserts that the restrictive covenant set forth above is reasonable and necessary to protect its goodwill, to protect its own interest in avoiding unfair competition, and to protect the franchise system it has developed from erosion. *See*, Motion for Preliminary Injunction, pp. 10-16. Plaintiff asserts that the covenant only operates to prohibit Mr. Szewczyk from conducting a home-repair business "within 100 miles of his former territory".[2] *Id*. at 13. And although plaintiff contends that this 100-mile buffer area beyond defendant's former territory is reasonable, it invites the Court to modify either the geographic or time restriction if they are deemed unreasonable. *Id*., p. 19 n.3.

In opposing the preliminary injunction, defendant has construed the scope of the restrictive covenant much more broadly than plaintiff's actual request. According to defendant, the restriction on working within a 100-mile radius of any HomeTask franchise, as the covenant reads, precludes him from working as a handyman in "at least half the States of the Union". Plaintiff's Opposition, p. 10. Defendant's argument fails to address the reasonableness of plaintiff's actual request, for a restriction on working within the 100-mile radius of plaintiff's former territory, composed of six zipcodes in and near downtown Seattle, 98101, 98102, 98104, 98122, 98112, and 98121. *See*, Motion for Preliminary Injunction, p. 13, lines 8-9 ("Szewczyk's restrictive covenant requires only that Szewczyk not operate a competitive business within 100 miles of his former territory.")

Plaintiff has established that it has a legitimate interest in enforcing the terms of the covenant, to the extent that they are reasonable in scope and duration. The interests asserted by HomeTask—preventing defendant from exploiting the company's goodwill and his former customer base—certainly operate within his former territory. As to that area, HomeTask has adequately demonstrated a likelihood of success on the merits, and the possibility of irreparable harm, to earn the preliminary injunction. However, the 100-mile radius beyond defendant's former territory is unreasonable. It would include most of western Washington, from the Canadian border south past

---

[2]This is a more limited area than that asserted in plaintiff's proposed order, which includes other HomeTask franchisees. Dkt. # 2-2. Plaintiff shall be held to the representations in the motion itself.

ORDER ON MOTION FOR PRELIMINARY
INJUNCTION - 7

Chehalis, and from Ellensburg on the east to the Pacific coast. Possibly recognizing that scope may be overbroad, HomeTask has requested that if the Court finds the restriction to be unreasonable in scope or duration, it be modified rather than found unenforceable.

The Court shall modify the restrictive covenant to make it reasonable in scope. *Armstrong v. Taco Time International*, 30 Wash. App. at 543. The covenant not to compete shall be enforced by preliminary injunction, but the restricted territory shall be modified to include only plaintiff's actual former territory, plus a reasonable buffer of twenty-five miles beyond the boundaries of that area. Under Section 9(b) of the franchise agreement, defendant shall also be enjoined from soliciting any of his former customers. However, the Internet restriction in Section 9(a)(ii) is vague and overbroad, and shall not be enforced.

As to defendant's use of the telephone number, Section 7.6(b) of the franchise agreement requires that upon termination a former franchisee must "authorize telephone, . . . directory and listing entities to transfer all numbers . . . to us or our designee. . . ." However, in this case the number at issue was defendant's personal cell phone number before he entered into the franchisee agreement. He asserts that it would be unduly burdensome for him to cancel the cell phone contract and inform all personal contacts of a new number. The contract provision shall accordingly be enforced only as to defendant's use of the phone number in his business. Defendant shall immediately cease to use that number to promote or conduct his business, and shall destroy all advertising materials that list the phone number in connection with his business.

## CONCLUSION

As set forth above, with respect to the trademark claims, plaintiff has failed to meet the burden of demonstrating either (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised, and the balance of hardships tips sharply in plaintiff's favor. *Los Angeles Memorial Coliseum Commission v. National Football League*, 634 F. 2d at 1201. Accordingly, the motion for a preliminary injunction is DENIED on the trademark claims.

As to the contract claims, the Court finds that plaintiff has demonstrated that it has a likelihood of

ORDER ON MOTION FOR PRELIMINARY
INJUNCTION - 8

succeeding on the covenant not to compete, and the franchise termination provisions. There is a possibility of serious injury to plaintiff's interest in the goodwill of the franchise. The motion for a preliminary injunction is accordingly GRANTED on the contract claims, with the limitations set forth above. Bond shall be set in the amount of $10,000 pursuant to F.R.Civ.Proc. 65(c).

DATED this 16 Day of October 2007.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE